UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-CV-21197-MGC

ALBERTO FERNANDEZ & ALEX
FERNANDEZ,

       Plaintiffs,

v.

KROLL ASSOCIATES, INC., a foreign
corporation,

       Defendant.

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, KROLL ASSOCIATES, INC. ("Kroll"), hereby moves this Honorable Court, pursuant to *Fed. R. Civ. P.* 12(b)(6), for an order dismissing the Amended Complaint filed by Plaintiffs, ALBERTO and ALEX FERNANDEZ [DE 12], and in support thereof, states:

1.     Plaintiffs initially filed a one-count Complaint [DE 1, Exhibit A] for breach of contract against Kroll due to alleged failures by Kroll to discover certain information about an investment Plaintiffs made with an international company.

2.     In that Complaint, Plaintiffs alleged that in connection with this prospective international investment, they engaged the services of the Baker McKenzie law firm ("Baker McKenzie") to help determine the investment's legitimacy. *See* Complaint, ¶ 11.

3.      After Kroll filed a Motion to Dismiss Plaintiffs' Complaint [DE 5] based partly on the fact that there is a written contract showing that Baker McKenzie, not the Plaintiffs, actually contracted with Kroll for the provision of Kroll's services, Plaintiffs thereafter amended their Complaint as a matter of right before a responsive pleading was filed by Kroll.

4.      In the Amended Complaint [DE 12] filed on May 29, 2009, Plaintiffs attempt to state causes of action for breach of contract (Count I) and negligence (Count II) against Kroll.  Both counts fail to state causes of action and should be dismissed for the reasons set forth below.

5.      Specifically, in the Amended Complaint Plaintiffs allege they "formally engaged Kroll to conduct a due diligence investigation of The Bottom Line of South Florida." *See* Amended Complaint, ¶ 13.

6.      Plaintiffs neglect to attach to the Amended Complaint a copy of their purported contract with Kroll.  In fact, there is no such contract.  The only documentation Plaintiffs attach to the Amended Complaint to establish the purported contractual relationship between themselves and Kroll is a copy of a check alleged to have been tendered to Kroll for its services. *See* Amended Complaint, ¶ 21 and Exhibit "1" attached thereto.

7.      Although the check appears to be written from one Plaintiff, Alex Fernandez, to Kroll, the check in and of itself fails to establish any contractual relationship between both of these Plaintiffs and Kroll.  Simply because a third party pays a debt of another does not make that party the client or even a party to the contract.  By

way of example, when a lawyer is paid by a third party for services the lawyer is rendering to another, that payor does not become the lawyer's client nor does the lawyer have any obligations to that third party.   *See* Comments to Rule 4-1.7 of the Rules Regulating the Florida Bar.

8.     In what appears to be an attempt to avoid dismissal of their Amended Complaint for the reasons outlined in Kroll's first Motion to Dismiss Plaintiffs' Complaint [DE 5], Plaintiffs have failed to attach the actual contract entered into with Kroll, because that contract clearly shows that the parties to it are Kroll and Baker McKenzie.   That contract (the "Baker McKenzie/Kroll Contract") is attached to this Motion to Dismiss as Exhibit "A."

9.     Although Plaintiffs neglect to attach a copy of the Baker McKenzie/Kroll Contract to their Amended Complaint, omitted documents referenced in and central to the Plaintiffs' claim may still be considered by the Court when ruling on a 12(b)(6) motion to dismiss. *Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (holding that if a plaintiff refers to a document in its complaint and the document is sufficiently related to the claim, the court may consider the document as part of the pleading for purposes of a Rule 12(b)(6) motion and does not require conversion of the motion into a motion for summary judgment); *Caravello v. Am. Airlines, Inc.*, 315 F. Supp. 2d 1346, 1349 (S.D. Fla. 2004) (court properly considered agreement attached to memorandum in support of motion to dismiss complaint when ruling on a 12(b)(6) motion); *Aruvision Holding and Exploitation, B.V. v. Disney Television Int'l, Inc.*, 992 F.

Supp 1370, 1372 (S.D. Fla. 1997) (court properly considered agreement attached to motion to dismiss when ruling on a 12(b)(6) motion).

10.     In this case, the Baker McKenzie/Kroll Contract (Exhibit "A"), is clearly central to Plaintiffs' breach of contract claim and should be considered by the Court. The contract negates Plaintiffs' allegations that Plaintiffs "formally engaged Kroll," as the terms of the contract clearly show Kroll was engaged by Baker McKenzie. The contract is additionally important because it defines the scope of Kroll's engagement, memorializes the 48-hour time limitation imposed on Kroll, as well as specifies Kroll's exculpation for, *inter alia,* special, indirect and consequential damages.

11.     One who is not a party to a contract cannot be bound by the terms of that contract and likewise does not have standing to attempt to enforce its terms. *White v. Exchange Corp.*, 167 So.2d 324, 326 (Fla. 3d DCA 1964) (stating that "[i]t is elementary that a person not a party nor in privity with a contract does not have the right to sue for its breach").

12.     For that reason alone, Count I of the Amended Complaint should be dismissed. However, Kroll has an additional ground to support dismissal of Count I of the Amended Complaint.

13.     Before this lawsuit was filed, Plaintiffs instituted a separate, prior lawsuit against Baker McKenzie, wherein Plaintiffs made contradictory and repugnant allegations to those contained in the present matter, namely that Baker McKenzie hired Kroll. A true and correct copy of the complaint filed in Case No. 08-50604-CA, formerly

pending in the Circuit Court of Miami-Dade County, Florida, is attached hereto as Exhibit "B" (the "Baker McKenzie Complaint").

14.     In the Baker McKenzie Complaint, Plaintiffs allege, and admit, that "attorneys at Baker & McKenzie... hired Kroll Investigations..." *See* Exhibit "B," ¶¶ 19 and 39.   Plaintiffs are judicially estopped from asserting contrary allegations in this Amended Complaint. *Transamerica v. Institute of London Underwriters*, 430 F.3d 1326, 1335 (11th Cir. 2005); *Chase & Co. v. Little*, 156 So. 609 (Fla. 1934).   If left with the option of making allegations consistent with the Banker McKenzie Complaint, Plaintiffs would be unable to allege a contractual relationship with Kroll.

15.     Although Plaintiffs neglect to attach a copy of the Baker McKenzie/Kroll contract to their Amended Complaint, that omitted document is also properly considered by this Court when ruling on Kroll's Rule 12(b)(6) motion to dismiss, based on the authority cited above.

16.     This court may also consider Plaintiffs' admissions in the Baker McKenzie Complaint that Baker McKenzie hired Kroll. *Watson v. Bally Mfg. Corp.*, 844 F. Supp. 1533, 1535 (S.D. Fla. 1993) (wherein the court properly considered matters of public record when ruling on a 12(b)(6) motion); *see also In Re Sunbeam Securities Litigation*, 89 F. Supp. 2d 1326, 1335 (S.D. Fla. 1999).

17.     Furthermore, if a document attached to or referenced in a pleading negates the allegations of the cause of action, it is appropriate for a court to dismiss the those counts of the complaint. *Ship Constr. & Funding Serv. (USA), Inc. v. Star Cruises*, 174

F. Supp. 2d 1320, 1326 (S.D. Fla. 2001) (citing *Franz Tractor Company v. J.I. Case Company*, 556 So. 2d 524 (Fla. 2d DCA 1990)).

18.     The Baker McKenzie/Kroll Contract (Exhibit "A") and the Plaintiffs' allegations in the Baker McKenzie Complaint (Exhibit "B") that Baker McKenzie directly hired Kroll squarely contradict and negate Plaintiffs' claim that they contracted with Kroll.  These two documents negate Plaintiffs' cause of action in Count I of the Amended Complaint.  Accordingly, plaintiffs have failed to state a cause of action for breach of contract and Count I of their Amended Complaint must be dismissed.

19.     Count II of Plaintiffs' Amended Complaint is similarly deficient and should be dismissed for failure to state a cause of action.

20.     In Count II of the Amended Complaint, Plaintiffs' attempt to allege a cause of action for negligence, stating that Kroll "breached its duty to the Plaintiffs," *see* Amended Complaint, ¶ 29, a duty that apparently arises because of the allegation that "Plaintiffs engaged the Defendant to conduct a basic due diligence investigation of The Bottom Line, SVDB and the legitimacy of their business with Ripley's Department Stores," *see* Amended Complaint ¶ 26.

21.     As indicated in the Baker McKenzie/Kroll Contract (Exhibit "A") and the Baker McKenzie Complaint (Exhibit "B"), the facts of the situation are repugnant to the allegations of Count II of Plaintiffs' Amended Complaint because Plaintiffs did not "engage" Kroll as alleged in this Count.  These documents negate any relationship that Plaintiffs attempt to establish between themselves and Kroll.

22.     In the absence of any non-contradictory allegations of a relationship between Plaintiffs and Kroll, Plaintiffs have failed to allege the existence of any duty owed by Kroll to them, one of the primary elements of a cause of action for negligence under Florida law. *Zivojinovich v. Barner*, 525 F.3d 1059, 1067 (11th Cir. 2008) (stating that the elements of a negligence claim under Florida law are (1) a legal duty of defendant, (2) defendant's breach of that duty, (3) plaintiff's injuries actually and proximately caused by the breach, and (4) the plaintiff suffering actual harm) (citing *Clay Electric Coop., Inc. v. Johnson*, 873 So.2d 1182, 1185 (Fla. 2003)).

23.     When the allegations of Plaintiffs' Amended Complaint that it had a contractual relationship with Kroll are properly discounted, Count II of Plaintiffs' Amended Complaint lacks sufficient allegations of a legal duty by Kroll in favor of Plaintiffs.   Therefore, Count II of Plaintiffs' Amended Complaint should likewise be dismissed for failure to state a cause of action.

WHEREFORE, Defendant KROLL ASSOCIATES, INC. hereby requests that this Honorable Court dismiss the Amended Complaint filed by Plaintiffs, ALBERTO and ALEX FERNANDEZ., with prejudice, grant Defendant, KROLL ASSOCIATES, INC., its attorneys' fees and costs as applicable, and grant such further relief as this Court deems just and proper.

DATED this 12th day of June, 2009.

Respectfully Submitted,

QUARLES & BRADY LLP


By: s/ Andrew G. Tretter
       Andrew G. Tretter
       Florida Bar No. 160326
       Kelly L. Davis
       Florida Bar No. 26461
       1395 Panther Lane, Suite 300
       Naples, FL  34109
       239.262.5959 Telephone
       239.434.4999 Facsimile
       Trial Counsel for Defendant,
          Kroll Associates, Inc.
       kelly.davis@quarles.com
       andrew.tretter@quarles.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

QUARLES & BRADY LLP


By: s/ Andrew G. Tretter  _____
     Andrew G. Tretter

**SERVICE LIST**
**Fernandez, et al. v. Kroll Associates, Inc.**
**Case No. 1:09-CV-21197-COOKE/BANDSTRA**
**United States District Court, Southern District of Florida**

J. Alfredo Armas, Esq.
alfred@aablawfirm.com
ALVAREZ, ARMAS & BORRON, LLC
901 Ponce de Leon Boulevard, Suite 304
Coral Gables, FL  33134
305-461-5100 Telephone
305-461-8642 Facsimile
Attorneys for Plaintiffs Alberto
Fernandez and Alex Fernandez

**Served via Notice of Electronic Filing**

Andrew G. Tretter
andrew.tretter@quarles.com
Kelly L. Davis
kelly.davis@quarles.com
QUARLES & BRADY, LLP
1395 Panther Lane, Suite 300
Naples, FL  34109
239.262.5959 Telephone
239.434.4999 Facsimile
Attorneys for Defendant, Kroll
Associates, Inc.

# EXHIBIT A

to

Defendant's Motion to Dismiss Plaintiffs' Amended
Complaint and Incorporated Memorandum of Law

# EXHIBIT A

to

Defendant's Motion to Dismiss Plaintiffs' Amended
Complaint and Incorporated Memorandum of Law

# KROLL

'07     2570- 146

Kroll Associates, Inc.
1200 Brickell Avenue, 20th Floor
Miami, FL 33131
305.789.7100
Fax 305.789 7159
www.kroll.com

December 17, 2007

Pilar L. Bosch
Attorney at Law
Baker McKenzie
1111 Brickell Avenue
Suite 1700
Miami, Fl 33131

Dear Mrs. Bosch:

We are pleased to confirm your engagement of Kroll Associates, Inc.

1.    Services

        You have asked us to perform an initial and limited Due Diligence investigation on "The
Bottom Line of South Florida", which is one of the United States based purchasing agents for Ripley
Department Stores.  Additionally you asked her to do limited reputational, litigation and media inquiries
in both Chile and Peru on both the stores and their owners. You asked that initially we spend one day
of Kroll professional time on these entities, seeking an initial response within 48 hours.

        We understand you may ask us to expand the scope of the Assignment or undertake
Additional Assignments.  Additional Assignments accepted by us will be set forth in a supplementary
writing that references this Agreement, sets forth the charge for our services and is signed by both of
us.  Additional Assignments will be governed by the terms of this Agreement, unless different terms
are agreed to by both of us in writing.

        If at any time during the course of the Assignment you have a question about any aspect of
our work, please let us know.

        We agree to perform the Assignment under your direction. We understand that you and/or
your assistant attorneys may supply us with certain information and materials developed for a litigation
or other matter protected by attorney-client privilege and that we may develop certain information and
materials regarding such matter. We agree that such information and materials are privileged.

2.    Engagement Terms

        If any person or entity requests or subpoenas any information or materials relating to the
Assignment which are within our custody or control (or the custody or control of any of our agents or
representatives), we will inform you of such request or subpoena.

        Should you require us to take any legal action to seek protection against disclosure of such
information or materials, you will either retain legal counsel to represent us or will indemnify us for all
costs and expenses, including reasonable attorney's fees and disbursements, resulting from such
action. This includes without limitation paying our hourly rate for responding to discovery requests and
preparing for and testifying in depositions, administrative proceedings and at trial.

Rev. 12/06 (r1)

1

# KROLL

You agree to hold harmless and indemnify us (including our officers, employees and agents) against all claims, damages and costs (including reasonable attorney's fees and disbursements) arising out of the Assignment, except for such claims, damages and costs resulting from any actions by us constituting gross negligence, fraud, willful or unlawful conduct or a breach of the terms of this Agreement.

You agree, as well as any other party acting on your behalf each agrees, that neither we, our affiliates, our representatives nor our employees will be liable for any claims, liabilities or expenses relating to this engagement for an aggregate amount paid by you to us pursuant to this engagement, except to the extent finally judicially determined to have resulted from our gross negligence, fraud, willful or unlawful conduct. In no event will we or our affiliates, our representatives or our employees be liable for consequential, special, indirect, punitive or exemplary losses, damages or expenses relating to this engagement, including without limitation damages for loss of data, loss of business profits, business interruption, or other pecuniary loss, even if we, our affiliates, our representatives or our employees have been advised of the possibility of such damages.

3.    Methodology

In conducting a background investigation of this nature we will:

1/ Review limited public records for civil and criminal records checks in the jurisdictions in which the department stores are located.

2/ Review civil and criminal litigation records, in Chile and Peru within the available time limits in an attempt to locate any pending litigation in business located jurisdictions.

3/ Search media and other Kroll human  sources in Chile and Peru to identify any adverse media or negative indicators as to the company and the owners reputation.

We anticipate that this assignment would take no less than three days. However, we are beginning immediately in an attempt to meet your deadline.

Based of the discussions we have conducted with you, we have begun this assignment in the interest of expediting your requested work.

Should it be necessary, any additional assignments outside the above stated parameters of this assignment, and accepted by us, will be set forth in a supplementary writing which references to this Agreement, and which sets forth the charges for our services, and is signed by both of us.

These assignment requests may take the form of telephone calls, fax, or e-mail.  If by phone, for clarity, these contacts should be followed up with a brief written request of what is needed. During the course of the Assignment, please let us know promptly if you have any questions at any time about any aspect of our services for you.

4.    Confidentiality

You agree that reports and information received from us will be treated as confidential and are intended solely for your private and exclusive use, except with our prior written consent. We agree to maintain the confidentiality of all confidential or proprietary information received from you.

# KROLL

5.    Fees and Charges

We have agreed that the charge for our professional services for the Assignment will be $2,500.00. We have agreed upon this amount based on a number of factors.

Additional charges will include out-of-pocket expenses and an allocation of administrative service costs equal to 7% of the amount charged for professional fees to cover costs not directly billable such as telecommunications, reproduction and other administrative costs.  Database usage fees will be included as an expense item and will be captured and charged at cost.

You have agreed to pay us an initial retainer of $2,500.00. You will be billed on a monthly basis with the retainer amount applied to the final invoice at the completion of the engagement.

We intend to provide invoices to you on a monthly basis. Payment of our invoices is due promptly upon receipt and any unpaid balances will accrue interest at the rate of 12% per annum from 30 days after the date of each invoice. We reserve the right to terminate our services at any time if you fail to pay our invoices in a timely manner. If it becomes necessary to incur expenses in order to collect the fees and expenses owed us, you agree to reimburse us for such expenses, including reasonable attorney's fees.

WE WILL BEGIN OUR WORK PROMPTLY AFTER RECEIPT OF YOUR EXECUTED ENGAGEMENT LETTER. WE RESERVE THE RIGHT TO TERMINATE THE ASSIGNMENT IF THIS ENGAGEMENT LETTER IS NOT SIGNED AND RETURNED TO US TOGETHER WITH YOUR CHECK FOR THE RETAINER WITHIN THREE BUSINESS DAYS.

6.    Taxes

Certain of our services may be subject to Florida sales taxes when oral or written reports are delivered by us in Florida. Sales taxes may be applicable in other states and localities as well. Where divisible, fees for taxable services will be detailed separately from those for non-taxable services. We have agreed that, in this case, all report(s) by us will be delivered in Florida

6.    Data Disclaimer

On June 25, 2001, the US Supreme Court decided that the inclusion of articles from freelance authors in electronic databases without copyright transfer was an infringement of the 1976 Copyright Act (*New York Times v. Tasini*). Therefore, it is possible that certain articles written by freelance authors between 1976 and 1995 might not be included in our news databases. However, Kroll has online subscriptions to thousands of local and global news sources and will provide comprehensive research drawing upon these numerous and diverse information sources.

7.    Conflicts

You agree that our engagement by you in the current discrete matter does not prevent us from providing future services to clients adverse to you on matters not substantially related to this current discrete matter.

Rev 12/06 (r1)

3

# KROLL

\* \* \*

This Agreement shall be effective as of the date on which we first provide services to you. If this letter is satisfactory to you, kindly execute and return the enclosed copy. We look forward to working with you.

Very truly yours,

*Thomas V Cash*

By:_____
    Thomas V. Cash
    Executive Managing Director

AGREED TO AND ACCEPTED:

BAKER MCKENZIE

By:_____
    Pilar L. Bosch
    Attorney at Law

Kroll Associates, Inc. is licensed by the Florida Department of State, Division of Licensing

4

Rev 12/05 (r1)

# EXHIBIT B

to

Defendant's Motion to Dismiss Plaintiffs' Amended
Complaint and Incorporated Memorandum of Law

# EXHIBIT B

to

Defendant's Motion to Dismiss Plaintiffs' Amended
Complaint and Incorporated Memorandum of Law

# IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
## MIAMI-DADE COUNTY, FLORIDA

ALBERTO FERNANDEZ,
                               Plaintiff,                    0 8 - 5 0 6 0 4 CA   2

vs.                                              Case No.:              CA

PILAR L. BOSCH, ROBERT F.
HUDSON JR., and BAKER &
McKENZIE LLP, a Limited Liability
Partnership ,
                               Defendants./
_____

### COMPLAINT

Plaintiffs sues the Defendants and states:

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

1.     This is an action for damages within this Court's jurisdiction.

2.     This is an action for legal malpractice.  All of the Defendants are engaged in the practice of law.

3.     All acts alleged herein occurred in Miami-Dade County, Florida and Miami-Dade County, Florida is otherwise a proper venue and the most convenient forum for resolution of this dispute.

4.     All conditions precedent to this action have occurred or have been waived.

5.     The Plaintiff, Alberto Fernandez, is a resident of Miami-Dade County,

1

Florida.

6.      The Defendant, PILAR L. BOSCH ("BOSCH") is an attorney licensed to practice law in the State of Florida.

7.      The Defendant, ROBERT F. HUDSON JR. ("HUDSON JR.") is an attorney licensed to practice law in the State of Florida.

8.      Bosch and Hudson Jr. are, and at all material times herein, were, employees, servants and agents of the Defendant, BAKER & McKENZIE LLP, a Limited Liability Partnership ("Baker & McKenzie") with offices in Miami-Dade County, Florida.

## COUNT I
## PROFESSIONAL NEGLIGENCE

The Plaintiff incorporates all of the general allegations into this count and further states that:

9.      In late 2007, Alberto Fernandez was approached by Jeffrey Feuer ("Feuer"), a non party, regarding an investment in SVDB, LLC ("SVDB") .

10.     SVDB was one of a series of corporations created by Feuer and his business partner Andres Pimstein ("Pimstein"), a non party.

11.     The investment in SVDB was described by Feuer and Pimstein as a means of infusing capital into a joint venture between SVDB and another corporation, The Bottom Line of South Florida.   The joint venture was

2

supposedly formed in order to supply IPODs, a popular consumer electronics product, to Ripley's department stores, a department store chain that operates in Chile and Peru.

12.    Feuer and Pimstein represented that The Bottom Line distributed IPODs to the Ripley's department stores in South America.  Feuer and Pimstein represented that while The Bottom Line was not an exclusive distributor to Ripley's, and while Ripely's was not obligated to purchase IPOD's from The Bottom Line, the business was very lucrative because of the personal relationships between the principals of the parties.

13.    Feuer and Pimstein promised the Plaintiff returns as high as 18% on his investment.

14.    Alberto Fernandez retained Bosch and Hudson Jr. at Baker & McKenzie, to investigate Feuer, Pimstein, the Bottom Line and SVDB and to conduct a due diligence investigation of the investment.  He explained the business venture to Bosch and Hudson Jr. at Baker & McKenzie exactly as it had been explained by Feuer and Pomstein and he provided Bosch and Hudson Jr. at Baker & McKenzie an offering memorandum given to him by Feuer and Pomstein.

15.    Bosch is a partner in the Miami office of Baker & McKenzie and is a

3

member of Baker & McKenzie's Real Estate and Banking, Finance and Major Projects Practice Groups. She billed the Plaintiff at the rate of $$450 per hour.

16.     Hudson Jr. is the senior tax partner in the Miami office of Baker & McKenzie. He billed the Plaintiff at the rate of $795 per hour.

17.     Alberto Fernandez specifically asked Bosch and Hudson, Jr. to confirm that the parties and the venture were legitimate, and as represented by Feuer and Pimstein.

18.     On December 11, 2007, Baker & McKenzie was formally retained to conduct the due diligence. (See Exhibit 1 attached hereto).

19.     From December 11, 2007 through May of 2008, the attorneys at Baker & McKenzie reviewed the investment materials presented to Fernandez, including an offering memorandum.  In addition, attorneys at Baker & McKenzie met with Feuer, reviewed financial documents, and hired Kroll Investigations, a risk consulting company, to conduct further research into the investment.

20.     After concluding their due diligence, the attorneys at Baker & McKenzie identified only the following problems with the investment: a. that there was no formal agreement between The Bottom Line and SVDB;

4

and that b. that since there was no exclusive distributorship contract between The Bottom Line and the Ripley's department stores, the Ripley's department stores could stop or substantially decrease its business with The Bottom Line.   This issue was explained to the Plaintiff as follows: "According to the Confidential Placement Memorandum we reviewed, and our meeting with the owner, Mr. Feuer, the Company's sole business (at least for now) is to supply consumer electronics to the Bottom Line which in turn distributes them to the Ripley's Department store chain in Chile and Peru.  All of this has taken place based on personal relationships between the various parties without any binding agreements. We were told at the meeting that the Company has experienced great success with this arrangement; however, the lack of contractual relationships means, first, that Ripley is not bound to place orders and could cancel existing orders with The Bottom Line, which could prevent a continued income stream and cause losses."

21.    In fact, The Bottom Line of South Florida was never a distributor of IPOD's to Ripley Stores or to anybody else.  There were no existing orders, or even prior orders.  Neither The Bottom Line nor SVDB conducted any legitimate business.  The Bottom Line and SVDB venture was a classic

Ponzi scheme designed to defraud investors by using money from new investors to pay "dividends" to old investors.

22.     A proper due diligence investigation of the investment, precisely what the Defendants were hired to do, would have disclosed that the investment was a Ponzi Scheme designed to defraud investors.

23.     The Defendants' representation of the Plaintiff fell below the standards in the community for attorneys engaged in practices such as those of the Defendants, in that: the Defendants failed to warn Plaintiff that the investment was a Ponzi Scheme designed to defraud him; the Defendants failed to request from Feuer and Pimstein any financial documents, tax returns, audited statements, purchase orders, inventories, bank statements, or any other document that would have verified the existence of a legitimate on-going business enterprise; the Defendants further failed to contact Ripley's department stores to determine whether or not it had ever even conducted any business with The Bottom Line, SVDB, Pimstein or Feuer; the Defendants further failed to contact Apple Computer, the manufacturer of IPOD's, to determine whether or not it had ever even conducted any business with The Bottom Line, SVDB, Pimstein or Feuer.

24.     The Defendants' failure to advise the Plaintiff that the investment in

SVDB was a Ponzi Scheme designed to defraud investors fell below the standards in the community for attorneys engaged in practices such as those of the Defendants.

25.     In addition, the Defendants' failure to properly investigate SVDB and The Bottom Line in order to protect the Plaintiff's investment and their failure to identify the venture as a Ponzi scheme fell below the standards in the community for attorneys engaged in practices such as those of the Defendants.

26.     The Plaintiff acted on the Defendants' advice, accepted the two risks identified by the Defendants, and invested hundreds of thousands of dollars into the venture.   He further borrowed money from his friends and his brothers and invested those funds as well.

27.     All of the investment was lost.

28.     As a direct, proximate and legal result of the Defendants' negligence the Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment in his favor and against the Defendants, jointly and severally, together with court costs.

## COUNT II
## BREACH OF PROFESSIONAL SERVICES CONTRACT AGAINST THE DEFENDANT BAKER & MCKENZIE

7

The Plaintiff incorporates all of the general allegations into this count and further states that:

29.    In late 2007, Alberto Fernandez was approached by Jeffrey Feuer ("Feuer"), a non party, regarding an investment in SVDB, LLC ("SVDB") .

30.    SVDB was one of a series of corporations created by Feuer and his business partner Andres Pimstein ("Pimstein"), a non party.

31.    The investment in SVDB was described by Feuer and Pimstein as a means of infusing capital into a joint venture between SVDB and another corporation, The Bottom Line of South Florida.   The joint venture was supposedly formed in order to supply IPODs, a popular consumer electronics product, to Ripley's department stores,  a department store chain that operates in Chile and Peru.

32.    Feuer and Pimstein represented that The Bottom Line distributed IPODs to the Ripley's department stores in South America.   Feuer and Pimstein represented that while The Bottom Line was not an exclusive distributor to Ripley's, and while Ripely's was not obligated to purchase IPOD's from The Bottom Line, the business was very lucrative because of the personal relationships between the principals of the parties.

33.    Feuer and Pimstein promised the Plaintiff returns as high as 18% on

8

his investment.

34.     Alberto Fernandez retained Baker & McKenzie, to investigate Feuer, Pimstein, the Bottom Line and SVDB and to conduct a due diligence investigation of the investment.  He explained the business venture to Bosch and Hudson Jr. at Baker & McKenzie exactly as it had been explained by Feuer and Pomstein and he provided Bosch and Hudson Jr. at Baker & McKenzie an offering memorandum given to him by Feuer and Pomstein.

35.     Bosch is a partner in the Miami office of Baker & McKenzie and is a member of Baker & McKenzie's Real Estate and Banking, Finance and Major Projects Practice Groups. She billed the Plaintiff at the rate of $$450 per hour.

36.     Hudson Jr. is the senior tax partner in the Miami office of Baker & McKenzie. He billed the Plaintiff at the rate of $795 per hour.

37.     Alberto Fernandez specifically asked Bosch and Hudson, Jr. to confirm that the parties and the venture were legitimate, and as represented by Feuer and Pimstein.

38.     On December 11, 2007, Baker & McKenzie was formally retained to conduct the due diligence. (See Exhibit 1 attached hereto).

39.     From December 11, 2007 through May of 2008, the attorneys at

Baker & McKenzie reviewed the investment materials presented to Fernandez, including an offering memorandum. In addition, attorneys at Baker & McKenzie met with Feuer, reviewed financial documents, and hired Kroll Investigations, a risk consulting company, to conduct further research into the investment.

40.     After concluding their due diligence, the attorneys at Baker & McKenzie identified only the following problems with the investment: a. that there was no formal agreement between The Bottom Line and SVDB; and that b. that since there was no exclusive distributorship contract between The Bottom Line and the Ripley's department stores, the Ripley's department stores could stop or substantially decrease its business with The Bottom Line. This issue was explained to the Plaintiff as follows: "According to the Confidential Placement Memorandum we reviewed, and our meeting with the owner, Mr. Feuer, the Company's sole business (at least for now) is to supply consumer electronics to the Bottom Line which in turn distributes them to the Ripley's Department store chain in Chile and Peru. All of this has taken place based on personal relationships between the various parties without any binding agreements. We were told at the meeting that the Company has experienced great success with this

10

arrangement; however, the lack of contractual relationships means, first, that Ripley is not bound to place orders and could cancel existing orders with The Bottom Line, which could prevent a continued income stream and cause losses."

41.    In fact, The Bottom Line of South Florida was never a distributor of IPOD's to Ripley Stores or to anybody else.  There were no existing orders, or even prior orders.  Neither The Bottom Line nor SVDB conducted any legitimate business.  The Bottom Line and SVDB venture was a classic Ponzi scheme designed to defraud investors by using money from new investors to pay "dividends" to old investors.

42.    A proper due diligence investigation of the investment, precisely what the Defendants were hired to do, would have disclosed that the investment was a Ponzi Scheme designed to defraud investors.

43.    The Defendant Baker & McKenzie breached its contract with the Plaintiff in that: the Defendants failed to warn Plaintiff that the investment was a Ponzi Scheme designed to defraud him;  the Defendant failed to request from Feuer and Pimstein any financial documents, tax returns, audited statements, purchase orders, inventories, bank statements, or any other document that would have verified the existence of a legitimate on-

11

going business enterprise; the Defendant failed to contact Ripley's department stores to determine whether or not it had ever even conducted any business with The Bottom Line, SVDB, Pimstein or Feuer;  the Defendant failed to contact Apple Computer, the manufacturer of IPOD's, to determine whether or not it had ever even conducted any business with The Bottom Line, SVDB, Pimstein or Feuer;  the Defendant failed to advise the Plaintiff that the investment in SVDB was a Ponzi Scheme designed to defraud investors; and the Defendant failed to properly investigate SVDB and The Bottom Line in order to protect the Plaintiff's investment.

44.    The Plaintiff acted on the Defendant's advice, accepted the two risks identified by the Defendant, and invested hundreds of thousands of dollars into the venture.  He further borrowed money from his friends and his brothers and invested those funds as well.

45.    All of the investment was lost.

46.    As a direct, proximate and legal result of the Defendant's breach the Plaintiff has been damaged.

WHEREFORE, the Plaintiff demands judgment in his favor and against the Defendants, jointly and severally, together with court costs.

ALVAREZ, ARMAS & BORRON, P.A.
901 Ponce de Leon Boulevard

Suite: 304
Coral Gables, Florida 33134
(305) 461-5100

By: _____

J. ALFREDO DE ARMAS
FBN.: 360708

13



Baker & McKenzie LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131, USA

Tel: +1 305 789 8900
Fax: +1 305 789 8953
www.bakernet.com

Robert F. Hudson, Jr.
Tel: +1 305 789 8905
bob.hudson@bakernet.com

December 11, 2007

Mr. Alberto Fernandez
2666 Brickell Avenue
Miami, FL 33129

Re:    Corporate / Tax Advice

Dear Alberto:

This letter confirms our agreement that this Firm will represent you in regards to the corporate and tax issues associated with your investment in SVDB, LLC.

I will have primary responsibility for the representation of your matter and will use other Firm lawyers and paralegals, including lawyers in other offices of our Firm, as I believe appropriate in the circumstances.

We have agreed to perform these services at our standard hourly rates, which currently range from $250 to $795 per hour for attorneys and $165 per hour for paralegals in the Miami office. Unless we agree otherwise, our fees for services will be based on the time spent on the matter, computed at our hourly rates for the persons performing the services. Other charges for which we will bill you are described in the enclosed schedule of charges. Our rates and charges are subject to change. We will bill you monthly. Payment is due upon receipt of our statement.

If you have any questions, please call me. Otherwise, please sign and return the enclosed copy of this letter. Unless we agree otherwise in writing, the terms of this letter and our Standard Terms of Engagement for Legal Services will govern this engagement and any future assignments we accept from you.

Very truly yours,

Baker & McKenzie LLP

Robert F. Hudson, Jr.

Enclosures

Accepted and Acknowledged
this __ day of _____ 2007

_____

Baker & McKenzie LLP is a member of Baker & McKenzie International, a Swiss Verein.

# Baker & McKenzie

## Standard Terms of Engagement for Legal Services

**Governing Terms.** This statement contains the standard terms for our engagement as your lawyers. Unless modified in writing by mutual agreement, these terms will be an integral part of any agreement we may have with you. Please review this statement carefully and contact us promptly if you have any questions. We suggest that you retain this statement in your file.

**Application and Interpretation.** Your engagement is with Baker & McKenzie LLP, a member of Baker & McKenzie International, which is a Swiss Verein with member law firms around the world. In accordance with the common terminology used in professional service organizations, references in these Standard Terms, or otherwise in the course of your dealings with us, to a "partner" means a partner, or equivalent, in this or another such law firm. Similarly, references to an "office" means an office of any such law firm.

**Client Service Lawyer.** One lawyer will generally be assigned primary responsibility for seeing that your requests for legal services are met. Additional lawyers and paralegals from other Firm offices may assist in rendering the most appropriate and efficient legal services, and we will share confidential information with them regarding your matters for the purposes of better serving you.

**Scope of Our Engagement and Fees.** The scope of any engagement will be set out in a separate letter that will be sent to you each time we agree to represent you on an individual matter (Assignment Letter). Our fee arrangement will be set out in that letter.

**Conflicts.** We will always honor our duty of confidentiality to you and protect your information. Without detracting from our duty of confidentiality to you, this letter confirms our mutual agreement that, so long as we act in accordance with ethical requirements, we and other Firm offices may without your consent act for other persons or entities whose interests are adverse to you or your affiliates in matters not substantially related to our engagement by you. The adversity may be in litigation, legislative or regulatory matters, or in transactions or otherwise, all regardless of type, importance or severity of the matter.

We agree, however, that we will not act adversely to you in any instance where, as the result of our representation of you, we have obtained sensitive, proprietary or other confidential information of a nonpublic nature that, if known to any such other client of ours, could be used in a matter in which we are retained by our other client to your or your affiliates' material disadvantage, unless we screen our lawyers and paralegals who have such information from any involvement in the adverse representation.

You also understand that we and other Firm offices may obtain confidential information from other clients that might be of interest to you, but which we cannot share with you.

**Conflicts With Affiliates.** For purposes of our engagement, our client is only the entity designated in our Assignment Letter, and not its affiliates (the stockholders, parent, subsidiaries, directors, officers, or related companies of any entity, or the individual members of a trade association, or the partners of a partnership or joint venture). Accordingly, for conflict of interest purposes, we and other Firm offices may represent another client with interests adverse to your affiliates without obtaining your or their consent. We will expect you to inform us immediately if the designated client does business under any other name.

**Third Parties.** Our engagement for you does not create any rights in or liabilities to any third party.

**Termination of Services.** We are subject to the rules of professional responsibility for the jurisdictions in which we practice, which list types of conduct or circumstances that require or allow us to withdraw from representing a client. We may terminate our representation for any reason consistent with the applicable rules of professional

responsibility. We try to identify in advance and discuss with our client any situation that may lead to our withdrawal, and if withdrawal ever becomes necessary we give the client written notice of our withdrawal.

You may terminate our representation at any time by notifying us. Termination of our services will not affect your responsibility for payment for legal services rendered and additional charges incurred before termination and in connection with an orderly transition of your matters.

Our attorney-client relationship will be considered terminated upon our completion of the specific services that you have retained us to perform, or if open-ended services are agreed upon, when more than six months have elapsed from the last time you requested and we furnished any billable services to you. If you later retain us to perform further or additional services, our attorney-client relationship will be revived, subject to these and any subsequent written terms in the Assignment Letter. The fact that we may inform you from time to time of developments in the law which may be of interest to you, by newsletter or otherwise, should not be understood as a revival of an attorney-client relationship. Moreover, we have no obligation to inform you of such developments in the law unless we are engaged in writing to do so.

Your Papers. When termination occurs, papers and property that you have provided to us will, at your request, be returned to you promptly. Copies of papers we have created for you, which you may need but no longer have, will be made available to you. Our drafts and work product will belong to us. We reserve the right, subject to any applicable laws or rules of professional responsibility to the contrary, to destroy within a reasonable time any items described in this paragraph that are retained by us.

E-mail. Documents sent to you by e-mail (whether or not containing confidential information) will not be encrypted unless you request us, in writing, to encrypt outgoing e-mail and we are able to agree with you and implement mutually acceptable encryption standards and protocols.

We make reasonable attempts to exclude from our e-mails and any attachments any virus or other defect that might affect any computer or IT system. However, it is your responsibility to put in place measures to protect your computer or IT system against any such virus or defect, and we do not accept any liability for any loss or damage that may arise from the receipt or use of electronic communications from us.

Questions. One of our goals is to ensure that legal services are delivered effectively and efficiently, and that all billings are accurate and understandable. Please direct any questions about services or billing practices to your client service lawyer.

Agreement. These Standard Terms shall be incorporated into any specific engagement and will be part of each Assignment Letter. Except for pending uncompleted assignments, these Standard Terms supersede all prior understandings or agreements between you and us and they shall prevail over any contrary or alternative terms of yours or any third party. Any change to these terms must be made or confirmed in writing in the Assignment Letter and be signed by the Managing Partner of one of our Firm offices.

# Baker & McKenzie LLP
## Schedule of Client Costs

It is the policy of the US Region (offices) to recover only our cost of providing certain goods and services, which are auxiliary to practicing law. Following are statements of how we charge for the provision of the most frequently used goods and services:

**Reprographics and Printing.** We charge $0.19 per page for black and white copies and $0.75 for color copies when materials are produced in our offices. Outsourced printing, copying and assembly/finishing is charged to our clients at actual cost.

**Facsimiles.** We charge $1.00 per page for outgoing facsimiles, no charge is made for incoming facsimile transmissions.

**Telephone.** Baker & McKenzie's discounted Service Provider actual costs are passed through to our clients on all long distance and international calls. No charge is generated to clients for local telephone calls.

**Postage, Messenger and Courier Services.** Costs for envelopes and packages mailed, or delivered, on a client's behalf are billed at cost. When the time sensitivity of a delivery requires we use internal staff to insure proper handling, we charge a flat fee of $9.50 plus any additional costs incurred.

**Document Production and Support Services.** No charge is made for secretarial services and word processing during the regular work day. When overtime is required to complete a client project, we charge the marginal costs incurred. Other support services such as translation, notary, file retrieval and duplication are billed at cost.

**Electronic databases.** For electronic databases such as Lexis and Westlaw, we charge the discounted rate that we are charged by these companies.

**Travel, Transportation and Meals.** When a Baker & McKenzie LLP employee travels on behalf of a client, we charge the costs that the employee actually incurs. We strive to use discounted rates for airline travel and hotels.

We continue to work to minimize all of these charges to our clients. The attorneys of Baker & McKenzie LLP will be happy to discuss these policies with you at any time and welcome your comments.